IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SOVERAIN SOFTWARE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:04cv14 |
| | ) | |
| AMAZON.COM, INC. | ) | Hon. Leonard E. Davis |
| AND THE GAP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## SOVERAIN'S OPPOSITION TO AMAZON.COM'S MOTION TO STRIKE EXPERT REPORTS OF PETER MARTIN AND PRECLUDE HIS TESTIMONY

Defendant Amazon.com, Inc. ("Amazon") has filed a Motion to Strike the Expert Reports of Mr. Peter Martin and Preclude His Testimony (the "motion"). Plaintiff Soverain Software, LLC ("Soverain") opposes that motion.

## I.    INTRODUCTION

Amazon moved to exclude Mr. Martin on the ground that his testimony will not assist the trier of fact because he supposedly lacks relevant expertise and because he failed to use reliable methodologies. The Court should reject the motion because Mr. Martin has extensive knowledge of computer software and is well-qualified as an expert on the subject matter of this case. Mr. Martin's opinions and testimony are reliable and will be helpful to the finder of fact in resolving technical issues.

As demonstrated herein, Mr. Martin's expert reports and testimony meet the requirements established in *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993), for admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence. First, Mr. Martin's opinions will be useful to the trier of fact. For example, Mr. Martin's opinions highlight

flaws that exist in the supposedly reconstructed websites and in the method by which they were reconstructed. Mr. Martin's opinions will help the jury to decide what credence, if any, to give to the reconstructed websites. Second, Mr. Martin has decades of experience in the computer software field. Third, Mr. Martin's testimony is reliable and pertinent to the facts of this case.

Amazon raises numerous arguments for excluding Mr. Martin's testimony. However, the majority of them are, as a matter of law, improper bases for excluding expert testimony: the expert's selection of one accepted testing method over another accepted method; the expert's conclusions about anomalies in the allegedly reconstructed system and files; the experts production of documents; the expert's decision to consider or ignore facts related to his opinions; and the expert's decision to consider or ignore the testimony of third-party witnesses. None of these matters have any bearing on a *Daubert* analysis, but are instead factors for the jury to consider in weighing the credibility of his evidence. On the remaining issues, relating to whether Mr. Martin has sufficient expertise, Amazon's arguments are fatally flawed because Amazon applies an overly-narrow and myopic definition of what constitutes expertise. Additionally, Amazon, itself, has embraced Mr. Martin's opinions and testimony by citing and relying upon them in Amazon's own motions, and by including Mr. Martin on their witness list.

Amazon's criticisms of Mr. Martin are without merit, and Defendant's Motion to Strike should be denied.

## II.    BACKGROUND

Mr. Peter Martin has significant experience in the computer industry that dates back to 1983. At that time he was assigned to program a solution in Fortran (a programming language) to a heat transfer problem his then employer, Imatron, was experiencing with its equipment. [Exhibit 1 to the Declaration of William J. Brown, Jr. ("Brown Decl."), Peter Martin Deposition Transcript ("Martin Depo.") at 67:24-68:10.] Thereafter, he worked at Apple Computers, Inc.

from 1988 to 1990, managing a team of contributors in the software quality assurance group. [*Id.* at 69:16-23.] Mr. Martin first began as a programmer working on a portion of the "kernel" at Apple.[1] [*Id.* at 71:2-4.] At Apple, he collaborated with his colleagues to publish a paper regarding the use of C++ for the development and testing of the Macintosh Application - Finder. [*Id.* at 65:3-22.] It was a unique period at Apple in which Mr. Martin pioneered testing approaches using object-oriented computer languages. [*Id.*]

In 1990, Mr. Martin joined Taligent as its senior engineer in development systems. [Martin Depo. at 73:20-23.] The duties of that position required that he create test tools and provide guidance on the development of a testing framework in C ++ that would become integrated in the development environment. [*Id.* at 74:2-9.] Ultimately, this was to be applied to the Taligent operating system. [*Id.* at 74:7-9.] Next, he took a position at Verity managing their core development team. [*Id.* at 76:16-18.] In addition, Mr. Martin also programmed on a Sun operating system, developing test tools and data structures to improve Verity's international products. [*Id.* at 96:12-22.]

After a year, Mr. Martin moved to Visa International, where he was a senior systems architect, and later, became Director of software engineering process. [*Id.* at 77:7-25.] Apart from creating and managing an internal web site, Mr. Martin led multiple teams at Visa International in constructing, designing, and implementing architecture for its systems. [Brown Decl., Ex. 2, Expert Report of Peter Martin: Rebuttal To Reconstruction Report By Justin Erenkrantz of April 11, 2005 ("Martin Report") at 14-19.] Additionally, he edited a 267 page book on Java guidelines for large scale projects. [Martin Depo. at 78:6-79:2.] Although

---

[1] A kernel is the "core of an operating system--the portion of the system that manages memory, files, and peripheral device; maintains the time and date; launches applications; and allocates system resources." Brown Decl., Ex. 4, Microsoft Press Computer Dictionary 272 (3d ed. 1997).

Amazon asserts that Mr. Martin did not recall one specific detail of the Sun OS system, Amazon conveniently ignores Mr. Martin's work with Java, Sun's platform. [*Id.*]

Then, from 1999 to 2003, Mr. Martin worked for a variety of smaller companies as Vice President of Engineering and Chief Technical Officer. [Martin Report at 14-15.] In those positions he not only managed technical staff members but directed projects. One involved converting a product into a web based service. [Martin Depo. at 87:19-25.]

Mr. Martin has been a member of two national computer societies since 1993. [Martin Report at 18.]

## III.    ARGUMENT

Mr. Martin's extensive expertise and understanding of software applications, operating kernels, and designing large scale systems or tools, sufficiently qualify him to testify as an expert regarding the technical issues covered in his report.

### A.    Expert Testimony Is To Be Liberally Admitted Under Rule 702.

Federal Rule of Evidence 702 grants experts wide latitude to testify in the form of an opinion:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under this rule, expert testimony is to be liberally admitted. *Daubert*, 509 U.S. at 588; Fed. R. Evid. 702 Advisory Committee Notes (2000) ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."). The wide latitude afforded experts in expressing opinions, and the liberal admission of their testimony,

- 4 -

reflect the prevailing view that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The Supreme Court's decision in *Daubert* established a general framework for applying Rule 702. The Court concluded that Rule 702 requires a trial court to screen expert testimony, but only to protect the jury from expert opinions that do not rest on "a reliable foundation" or are not "relevant to the task at hand." *Id.* at 597.

These requirements were explicitly codified in Rule 702 by an amendment in 2000. It imposes three basic requirements for admissibility:

> (1) Evidence based upon scientific, technical, or other specialized knowledge must be useful to the finder of fact in understanding the evidence or making factual determinations;
>
> (2) the proposed expert must be qualified based upon "knowledge, skill, experience, training, or education"; and
>
> (3) the testimony must be reliable and fit the facts of the case, so that (a) the opinion is based on sufficient facts or data, (b) the opinion is the product of reliable principles and methods; and (c) the witness has applied the principles and methods reliably to the facts of the case.

Mr. Martin's opinions meet each and every one of these requirements.

**B.    Mr. Martin's Expertise In The Field Of Hardware And Software Systems Qualifies Him, Under Federal Rule Of Evidence 702, To Testify As To Amazon.com's Supposed Reconstruction Of Websites.**

**1.    Extensive Experience in Web Server Design and Programming Is Not Necessary for Assessing the Authenticity and Reliability of a Website Reconstruction.**

An expert with considerable academic and practical knowledge in a field may testify about a specific issue within the field, even if the expert was not previously familiar or personally experienced with the precise issue. *Loudermill v. Dow Chemical Co.*, 863 F.2d 566, 569-70 (8th Cir. 1988). In *Loudermill*, the trial court permitted a toxicologist, who had sufficient

knowledge of toxicology and liver function, to testify as to a cause of death, even though he was not a medical doctor and had not done prior research on liver disease involving the specific toxin. *Id.* The appellate court found no abuse of discretion because the expert's background was so closely related to determining cause of death. *Id.*

A website is a collection of computer programs that populates the content of the web pages returned to users and controls the flow of those web pages. *See* Microsoft Press Computer Dictionary 506 (3d ed. 1997). A web server, on the other hand, is a program which sends web pages to users in response to their requests. *Id.* at 506 (referencing definition of "HTTP server" at 239). Typically, programming a website is a task that is completely separate and distinct from programming a web server. It is, therefore, possible to evaluate a purported reconstruction of a website without having experience in designing and programming of a web server.

Mr. Martin has the requisite qualifications and experience to assess the reconstruction of a website. Starting in 1983, and until 2001, Mr. Martin occupied various positions in the software industry, covering the entire spectrum of software development tasks starting from software quality assurance and ending with building engineering organizations for creation of websites, among other things. [Martin Report at 14-17.] Mr. Martin's lack of personal experience in designing and programming of web servers does not make him unqualified to assess a purported reconstruction of a website.

Amazon attempts to refute Mr. Martin's expertise by indicating that his primary duties between 1993 and 2001 were managerial. The original websites that were supposedly reconstructed, which were assessed by Mr. Martin, were created in 1994. Amazon's argument unrealistically suggests that a programmer suddenly forgets everything he knew about programming when he becomes a manager. It follows that Mr. Martin's programming

- 6 -

experience prior to 1994 and his post-1993 management experience are pertinent to his ability to assess the purported reconstruction.

In short, Mr. Martin's extensive software expertise in the relevant time frame qualifies him to testify competently regarding the authenticity and reliability of reconstruction of the websites at issue in this case, and his testimony will assist the trier of fact.

### 2.    Amazon Utilizes an Overly-Narrow Definition of Expertise.

The chart on page 6 of the Amazon motion is premised on the fallacy that expertise may be developed only through hands-on programming experience. The chart ignores the value of experience gained through supervising programming projects and from other exposure to technology. Amazon ridicules the notion that Mr. Martin's expertise is derived, in part, from having read books on website technology and from designing web pages. [Motion at 8.] Amazon argues that Mr. Martin cannot serve as an expert because Martin was not familiar with certain technical tools prior to his engagement in this case. But, the clear rule is that expertise may be derived from any manner of study, including self-directed study and review of a topic. *See United States v. Bosch*, 914 F.2d 1239, 1242-43 (9th Cir. 1990) (IRS agent who had conducted certain drug-related tax investigations qualified as an expert to testify as to whether the defendant's actions, as alleged, would aid and abet drug distribution); *Thomas v. Newton Int'l Enter.*, 42 F.3d 1266, 1269-70 (9th Cir. 1994) (longshore worker who had reviewed subpoenaed documents from plaintiff satisfied Rule 702's "broad conception of expert qualifications" and had at least the "minimal foundation" required to give expert testimony). Indeed, Mr. Martin testified that he had "been designing a number of web pages", "had contracted for some website development work," had managed web-based projects and had read books to become more informed about HTTP and HTML technologies as a general educational matter. [Martin Depo.

- 7 -

21:6-24:11.] Mr. Martin's study and review of materials pertaining to website technology, as well as his supervision of programming activities, further support his qualification as an expert.

Amazon's motion suffers from another common fallacy – the fallacy of expert comparison. Repeatedly Amazon touts the credentials and experience of its own expert. However, the notion that the comparative backgrounds of competing experts has any bearing, whatsoever, on qualification to testify under Rule 702 is incorrect; that is an issue for the jury and has no bearing on Amazon's motion.

**C.    Mr. Martin Used Reliable Methodology To Evaluate The Reconstruction Effort.**

Mr. Martin was asked to assess the authenticity and reliability of purported reconstructions by Amazon's technical expert, Mr. Erenkrantz, of the original HotHotHot (H3) and Condom Country (CC) websites. [Martin Report at 2.] Mr. Martin primarily used two methodologies to assess the authenticity and reliability of those reconstructions: (1) he examined "last modified" dates of the file of the supposedly reconstructed websites and (2) he used a *cksum* utility to compare files. [*Id.* at 6-10; Brown Decl., Ex. 3, Supplemental Expert Report of Peter Martin: Rebuttal To Reconstruction Report By Justin Erenkrantz of April 11, 2005 ("Martin Supp. Report") at 3, 6-8.]

**1.    Use of the a Particular Command Comparison Is Not Imperative in Assessing the Authenticity and Reliability of a Website Reconstruction.**

Amazon contends that Mr. Martin's methodology for assessing the authenticity of the reconstructed websites was flawed because he failed to use the *diff* command for comparison of files' content. [Motion at 3-5.] *Diff* is typically used to compare the contents of two files. [Martin Depo. at 176:24-177:4.] It is not necessary to compare contents of all the files comprising the purportedly reconstructed website with their original versions to assess the

- 8 -

authenticity and reliability of reconstruction. The discrepancies in the last modified dates of the files pointed to by Mr. Martin are sufficient to raise reasonable doubts about the authenticity and reliability of the reconstruction, even though it may be different from the methodology suggested or favored by Amazon.

An expert's testimony cannot be excluded, pursuant to *Daubert,* simply because the expert employs one test, rather than an alternative test, when both tests are accepted in the field. *Heller v. Shaw Indus., Inc.* 167 F.3d 146, 160-61 (3rd Cir. 1999) (stating that expert's selection of one accepted methodology of measuring contaminants in the air rather than another acceptable method cannot be a basis of excluding his opinion though the expert was excluded on other grounds). Even the argument that there is a preferable method is not a sufficient basis to exclude an expert, provided the chosen method is acceptable. *Id.* Consequently, there is no support for Amazon's argument that Mr. Martin's choice to focus his opinions on last modified dates rather than using *diff* renders them unreliable.

In any event, Amazon completely disregards Mr. Martin's testimony where he states that he did use *diff* to compare various files before preparing his report. [Martin Depo. at 177:5-18.] Amazon also disregards Mr. Martin's Supplemental Expert Report, in which he describes an additional methodology for assessing the authenticity of the reconstructed websites by using the *cksum* command instead of *diff*. [Martin Supp. Report at 2-4, 6-8.] *Cksum* applies a complex mathematical formula to the content of a file and produces a large number, called "checksum." If the checksums of two files are different, then the content of these files must be different. By using the *cksum* command, Mr. Martin determined, in a reliable manner, whether two or more files had identical contents. The methodology used by Mr. Martin and described in his Supplemental Report is equivalent to the methodology which Amazon accuses him of not using.

Thus, Amazon's criticism is nothing more than a difference of opinion for the jury to evaluate and not a basis for excluding Mr. Martin.

**2.    The Opinion That the Purported Reconstruction May Not Have Been Authentic Was Warranted Based on the Date Discrepancies Alone.**

When new functionality is added to a website, or when it is updated for other reasons, files that comprise the website are modified. One attribute of a file, similar to its name or its size, is its "last modified" date. This attribute indicates the date and time when the file was last modified. A tool called Revision Control System (RCS) can be used to keep track of file modifications. Because Amazon claims to have provided Mr. Erenkrantz 1994 vintage source code and files to reconstruct the H3 and CC sites, the files that comprise the purported reconstructions of H3 and CC should have last modified dates in 1994, or earlier.

Mr. Martin identified files in Mr. Erenkrantz's reconstruction that had last modified dates both before and after they were allegedly committed to the RCS in 1994, some as late as 2005. [Martin Report at 9-10.] It is possible (as Amazon suggests) that the last modified dates of the recovered files had changed because of the peculiarities in recovering the RCS files. This, however, does not explain why some files remained with the original dates. Indeed, Amazon has been unable to explain many inconsistencies in the dates of the files used in the purported reconstruction.[2] Accordingly, this discrepancy is sufficient basis for Mr. Martin to opine that the reconstruction may not have been authentic. Certainly, it is no basis for disqualifying Mr. Martin.

---

[2] Furthermore, log files with last modified date of September 30, 1994, contained entries dated as late as November 17, 1994. Amazon's motion suggests that it is possible to write into a file on the operating system used for reconstruction and have the last modified date of the file unchanged after the write operation, as long as that file was not properly closed by the program that has opened it for writing. This is incorrect; writing into a file on an operating system used for the reconstruction changes the last modified date of that file immediately. Therefore, Mr. Martin's methods uncovered additional doubts as to the authenticity of the files used in the reconstruction.

**D.    Amazon.com's Motion To Strike Improperly Focuses On Mr. Martin's Conclusions.**

In several instances, Amazon's motion quarrels with Mr. Martin's conclusions.  For instance, Amazon contests Mr. Martin's observations about the use of a Macintosh computer and use of a proxy server in the demonstration of the purportedly reconstructed websites.  A difference of opinion with an expert's conclusions is not a sufficient basis to exclude the expert's testimony.

**E.    Mr. Martin Kept Detailed Documentation and Source Documents Supporting His Opinions.**

Amazon contends that Mr. Martin failed to keep a logbook of his findings.  Contrary to Amazon's assertion, Mr. Martin kept detailed documentation and source documents related to his opinions, and produced those documents to Amazon.  Indeed, Mr. Martin produced two separate reports and approximately 200 pages of supporting documents.  Amazon requested his documents shortly before his deposition, and Mr. Martin was initially unable to locate a few pages of notes he recorded at a computer inspection and deposition, but he eventually located the notes and will produce them to Amazon before Martin testifies.  Even if Mr. Martin had not retained his documents, that would have no impact on the admissibility of his opinions under Rule 702.  "[A]ny failure to produce documents is not a basis for invoking exclusion under *Daubert.*"  *McReynolds v. Sodexho-Marriot Servs.*, Inc., 349 F. Supp. 2d 30, 43 (D.D.C. 2004) (finding that failure by statistician to produce documents from which he obtained numbers for his reports did not support exclusion).  Thus, Amazon has neither factual nor legal grounds to argue that any alleged deliberate withholding documents should lead to exclusion of Martin's expert testimony.

**F.     An Expert's Decision To Rely Or Not Rely On Testimony Of Third Party Witnesses Is Not Grounds For Exclusion Of Expert Testimony.**

Amazon.com asserts that because Mr. Martin ignored the testimony of several third party witnesses who concluded that the screenshots were accurate, his opinion should be excluded. [Motion at 11-12.] Martin testified that there is no contemporaneous evidence that shows what the "Hot Hot Hot" and "Condom Country" websites looked like in 1994, so he could not confirm if the screenshots produced by Amazon.com's expert accurately depicted what the websites looked like at the time. [Martin Depo. at 164:9-165:11, 167:5-168:7.] As long as the methodology that Martin uses to reach his conclusions is sound, he is entitled to consider--or not consider--any evidence that is available. It is up to the jury to decide whether Martin gave the appropriate consideration to the available evidence.

When considering the admissibility of expert testimony, *Daubert* instructs district courts to focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. A district court should not exclude an expert's testimony based on the version of the facts that expert chose to give credence to when analyzing the data. *Walker v. Gordon*, 46 Fed.Appx. 691, 695 (3d Cir. 2002) (affirming admission of Expert who ignored testimony of a percipient witness). This rule applies here.

The credibility and weight of the testimony used by the expert in forming his opinion is to be determined by the jury, *not the court*. *Id.* (citing *Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983)). An expert has the right to consider any version of the disputed facts in forming his opinion. *Id.* at 695; *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003). His choice of facts is then subject to cross-examination, which will allow the jury to appropriately assess the weight to be given to the version of facts chosen. *Walker*, 46 Fed.Appx. at 696.

LAI-2193158v4

Martin, by choosing not to base his opinion on versions of facts given by third party witnesses who have been voluntarily cooperating with Amazon's counsel in their campaign to invalidate the patents in suit, has exercised his prerogative to choose the version of the facts he thinks is correct. According to Martin, the third party conclusions do not confirm the authenticity of the websites because he has no way of testing their reliability. [Martin Depo. at 167:5-168:7.] While a jury may ultimately disagree with his decision not to take the third party statements at face value, a court should not prejudge this by precluding his testimony. Martin's decision not to base his opinions on the conclusions of third party witnesses is not a basis to exclude his opinion.

Nor is Amazon's contention that Martin failed to consider certain facts a proper basis for a *Daubert* motion. Instead, this type of information that can be explored on cross-examination:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the [Rule 702] amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Rule 702, Advisory Committee Notes. If Amazon believes they have a basis to attack the factual basis of Mr. Martin's opinion, then they can do so on cross-examination. If Amazon believes Mr. Martin's opinions did not take into account a certain fact, a certain piece of literature or an inference that Amazon's expert makes, then "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the appropriate mechanisms by which to challenge Mr. Martin. *Daubert*, 509 U.S. at 596. "The fact-finder is entitled to hear [the expert's] testimony and decide whether it should accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250

- 13 -

(5th Cir. 2002) (reversing district court's exclusion of expert testimony when the underlying facts were in dispute and the critical causation question depended on which set of facts the jury believed).

> **G.     Amazon Has Endorsed Mr. Martin's Methodology and Conclusions By Citing and Relying on Mr. Martin's Opinions and Testimony in Several Motions.**

Amazon filed several summary judgment motions that cite to and rely on the testimony of Mr. Martin to support their arguments. [Amazon .com, Inc.'s Motion For Partial Summary Judgment of Non-Infringement of '780 Patent Claims 1-27, 29-45 at pp. 3-4.; Amazon .com, Inc.'s Motion For Partial Summary Judgment On Inequitable Conduct, Or Alternatively For Partial Summary Judgment On Materiality, Knowledge of Materiality, Or Intent To Deceive at p. 19.] Amazon has listed Martin as a rebuttal witness. Amazon cannot have it both ways.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Mr. Martin satisfies the requirement to testify as an expert under Rule 702 and the Court should deny Amazon's motion .

Respectfully submitted,

*William Scott w/permission*

Kenneth R. Adamo (Bar No. 00846960)
Attorney In Charge
JONES DAY
2727 North Harwood Street
Dallas, Texas  75201
Telephone:     (214) 220-1515
Facsimile:      (214) 969-5100
E-mail:  kradamo@jonesday.com

- 14 -

Thomas L. Giannetti
Ognjan V. Shentov
Jennifer Seraphine
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306
E-mail:  tlgianetti@jonesday.com

William J. Brown, Jr.
JONES DAY
3 Park Plaza, Suite 1100
Irvine, California  92614
Telephone:     (949) 851-3939
Facsimile:     (949) 553-7539
E-mail:  wbrown@jonesday.com

Carl R. Roth (Bar No. 17312000)
Michael Smith (Bar No. 18650410)
THE ROTH LAW FIRM LLC
115 N. Wellington, Suite 200
Marshall, Texas  75670
Telephone:     (903) 935-1665
Facsimile:     (903) 935-1797
E-mail:  cr@rothfirm.com

ATTORNEYS FOR PLAINTIFF
SOVERAIN SOFTWARE LLC

**PROOF OF SERVICE**

The undersigned certifies that on the 24th day of June, 2005, the foregoing pleading was electronically filed with the Court. Pursuant to Local Rule CV-5, this constitutes service on the following counsel:

Max. L. Tribble                           mtribble@susmangodfrey.com
Victoria Capitaine                        vcapitaine@susmangodfrey.com
Parker C. Folse III                       pfolse@susmangodfrey.com
Brooke A. M. Taylor                       btaylor@susmangodfrey.com
J. Christopher Carraway                   christopher.carraway@klarquist.com
Richard D. McLeod                         rick.mcleod@klarquist.com
John D. Vandenberg                        john.vandenberg@klarquist.com


                                    _____
                                          William J. Brown, Jr.