# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| SOVERAIN SOFTWARE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:04cv14 |
| | ) | |
| AMAZON.COM, INC., | ) | Hon. Leonard E. Davis |
| | ) | |
| Defendant. | ) | |

**SOVERAIN'S OPPOSITION TO AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT THAT '314 PATENT CLAIMS 34-39,
'492 PATENT CLAIMS 17-18 AND 35-36, AND '780 PATENT
CLAIMS 1, 4 AND 22-24 ARE INVALID UNDER 35 U.S.C. § 102**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................ 1

II.  STATEMENT OF GENUINE ISSUES............................................................ 4

    A.   Introduction................................................................................ 4

    B.   Daniel Kohn ............................................................................... 5

    C.   Joshua Smith .............................................................................. 7

    D.   Guy Haskin ................................................................................ 8

    E.   Experts ....................................................................................... 8

III. ARGUMENT ............................................................................................. 9

    A.   Amazon Has Failed to Establish That There Is No Genuine Issue of
        Material Fact As To the Alleged Dates of Invention of the NetMarket
        Website ....................................................................................... 9

    B.   Amazon Has Failed to Establish That There Is No Genuine Issue of
        Material Fact That the NetMarket Website Was in Prior Public Use.................. 14

    C.   Amazon Has Failed to Establish That There Is No Genuine Issue Of
        Material Fact As To Whether The NetMarket Website Meets All
        Limitations of the '314, '492 or '780 Claims ...................................... 16

IV.  CONCLUSION............................................................................................ 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aetna Life Insurance Co. v. Ward,*
    140 U.S. 76 (1891)..................................................................................4

*American Hoist & Derrick Co. v. Soma & Sons,*
    725 F.2d 1350 (Fed. Cir. 1984)............................................................2

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)............................................................................10

*Baker Oil Tools, Inc. v. Geo Vann, Inc.,*
    828 F.2d 1558 (Fed. Cir. 1987)..........................................................14

*Baxter International, Inc. v. Cobe Laboratories, Inc.,*
    88 F.3d 1054 (Fed. Cir. 1996)............................................................14

*C.R. Bard, Inc. v. Advanced Cardiovascular System, Inc.,*
    911 F.2d 670 (Fed. Cir. 1990)..............................................................9

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..............................................................................9

*Checkpoint Systems, Inc. v. All-Tag Security S.A.,*
    2005 WL 1421801 (Fed. Cir. June 20, 2005) ...................................12

*City of Elizabeth v. America Nicholson Pavement Co.,*
    97 U.S. 126 (1877)..............................................................................14

*Desper Products, Inc. v. QSound Laboratories, Inc.,*
    157 F.3d 1325 (Fed. Cir. 1998)............................................................9

*Dow Chemical v. Mee Industries, Inc.,*
    341 F.3d 1370 (Fed. Cir. 2003)..........................................................12

*EMI Group N. America, Inc. v. Cypress Semiconductor Corp.,*
    268 F.3d 1342 (Fed. Cir. 2001)......................................................2, 16

*EWP Corp. v. Reliance Universal, Inc.,*
    755 F.2d 898 (Fed. Cir. 1985)..............................................................2

*Eolas Techs., Inc. v. Microsoft Corp.,*
    399 F.3d 1325 (Fed. Cir. 2005)..........................................................14

*Finnigan Corp. v. International Trade Commission,*
    180 F.3d 1354 (Fed. Cir. 1999)............................................................................10, 11, 12

*Juicy Whip, Inc. v. Orange Bang, Inc.,*
    292 F.3d 728 (Fed. Cir. 2002)....................................................................................11, 12

*Kalman v. Kimberly-Clark Corp.,*
    713 F.2d 760 (Fed. Cir. 1983)......................................................................................2, 16

*Lisle Corp. v. A.J. Manufacturing Co.,*
    398 F.3d 1306 (Fed. Cir. 2005)....................................................................................2, 14

*Loral Fairchild Corp. v. Matsushita Electric Industrial Co.,*
    266 F.3d 1358 (Fed. Cir. 2001)............................................................................................4

*Marhurkar Corp. v. C.R. Bard, Inc.,*
    79 F.3d 1572 (Fed. Cir. 1996)............................................................................................11

*Moleculon Research Corp. v. CBS, Inc.,*
    793 F.2d 1261 (Fed. Cir. 1986)..........................................................................................15

*Netscape Communications Corp. v. Konrad,*
    295 F.3d 1315 (Fed. Cir. 2002)....................................................................................14, 15

*Price v. Symsek,*
    988 F.2d 1187 (Fed. Cir. 1993)..........................................................................................11

*Radio Corp. of America v. Radio Engineering Laboratories, Inc.,*
    293 U.S. 1 (1934)...................................................................................................................2

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.,*
    264 F.3d 1344 (Fed. Cir. 2001)..........................................................................................11

*Sartor v. Ark. Natural Gas Corp.,*
    321 U.S. 620 (1944)........................................................................................................4, 10

*Sonnentheil v. Christian Moerlein Brewing Co.,*
    172 U.S. 401, 408 (1899)....................................................................................................10

*Texas Digital System v. Telegenix, Inc.,*
    308 F.3d 1193 (Fed. Cir. 2002)....................................................................................11, 12

*Thomson S.A. v. Quixote Corp.,*
    166 F.3d 1172 (Fed. Cir. 1999)..........................................................................................11

*Typeright Keyboard Corp. v. Microsoft Corp.,*
 374 F.3d at 1151 (Fed. Cir. 2004).......................................................................10, 11, 12

*Washburn & Moen Manufacturing Co. v. Beat 'Em All Barbed-Wire Co.,*
 143 U.S. 275 (1892)..........................................................................................................1, 2

*W.L. Gore & Associates, Inc. v . Garlock, Inc.,*
 721 F.2d 1540 (Fed. Cir. 1983)..........................................................................................14

*Woodland Trust v. Flowertree Nursery, Inc.,*
 148 F.3d 1368 (Fed. Cir. 1998)............................................................................................2

## FEDERAL STATUTES AND RULES

35 U.S.C. § 282 (2000) ...........................................................................................................2

35 U.S.C. § 102.................................................................................................................2, 14

Fed. R. Civ. P. 56 (c) ..............................................................................................................9

Fed. R. Civ. P. 56 advisory committee note (1963 Amendment)..........................................10

Plaintiff Soverain Software LLC ("Soverain") opposes the motion of defendant Amazon.com, Inc. ("Amazon") for partial summary judgment on the issue of validity of claims 34-39 of the '314 patent, claims 17-18 and 35-36 of the '492 patent, and claims 1, 4 and 22-24 of the '780 patent.[1] Submitted herewith are declarations of Michael Ian Shamos ("Shamos Dec.") and Thomas L. Giannetti ("Giannetti Dec.").

## I.  INTRODUCTION

In the landmark case, *Washburn & Moen Manufacturing Co. v. Beat 'Em All Barbed-Wire Co.* ("*Barbed-Wire Patent*"),[2] the Supreme Court had to decide whether a pioneering patent on barbed wire should be invalidated by oral testimony, on the part of a number of witnesses, that the subject matter of the invention had previously, and publicly, existed.[3]  Defendants, purveyors of an accused infringing device, brought before the court dozens of witnesses, all apparently without financial stake in the outcome, providing sworn testimony alleging that they had seen the innovation of barbed wire, in various forms developed by various ranchers in numerous locations, well prior to the invention by the patentee, Joseph Glidden.[4]  While the sheer quantity of witnesses and oral testimony provided was estimable, there was little or no actual physical or documentary evidence of what these witnesses had allegedly previously seen.

The Supreme Court concluded that the oral testimony of witnesses, uncorroborated by other forms of evidence and independent of the financial interest or disinterest of the witnesses,

---

[1] Amazon's motion is cited herein as "Def.'s Mot."
[2] 143 U.S. 275 (1892).
[3] *See id.* at 292 ("[I]t was Glidden, beyond [q]uestion, who first published this device, put it upon record, made use of it for a practical purpose, and gave it to the public, by which it was eagerly seized upon, and spread until there is scarcely a cattle-raising district in the world in which it is not extensively employed.  Under these circumstances we think the doubts we entertain concerning the actual inventor of this device should be resolved in favor of the patentee.").
[4] *See id.* at 285-92.

was insufficient to provide clear proof of prior invention or prior use by others. The Court thus concluded that Glidden's patent on barbed wire was valid.[5] The situation before the Supreme Court in *Barbed-Wire Patent* parallels the facts before this Court today.

As *Barbed-Wire Patent* and a long line of subsequent cases have established, prior public use and prior invention are defenses disfavored in patent infringement suits. Strict proof and corroboration are required.[6] The law of anticipation under 35 U.S.C. § 102 is equally strict. Anticipation requires the prior existence of each and every element of a claim in a single prior art reference,[7] and that any such proof of invalidity must be established by clear and convincing evidence.[8]

Amazon has failed to provide adequate corroboration of their evidence on alleged prior invention or prior public use by NetMarket, and Amazon has similarly failed to demonstrate that their alleged source of "prior art" anticipates each and every element of the claims in dispute. Instead of providing clear and convincing corroborated evidence of prior invention by NetMarket, Amazon has cobbled together snippets of documents and inconsistent oral testimony

---

[5] *See id.* at 284-85, 292 ("Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent, from the cotton gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined that they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny."). *Id.* at 284-85.

[6] *See Radio Corp. of Am. v. Radio Eng'g Lab., Inc.*, 293 U.S. 1, 7-10 (1934); *see also, e.g.*, *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1316 (Fed. Cir. 2005); *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1373 (Fed. Cir. 1998).

[7] *EMI Group N. Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1350 (Fed. Cir. 2001) (citing *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 771 (Fed. Cir. 1983)).

[8] *See* 35 U.S.C. § 282 (2000); *see also Lisle*, 398 F.3d at 1316. Amazon cites *EWP Corp. v. Reliance Universal, Inc.*, 755 F.2d 898, 895 (Fed. Cir. 1985), for the position that the "defendant's burden to show invalidity is more easily carried when it cites prior art which the Patent Office Examiner never saw during prosecution." Def.'s Mot. at 18. While the burden is more easily carried in the sense that there are no Patent Examiner's statements on such "unseen" art to counter and overcome, the standard for establishing invalidity is not lessened—*i.e.*, the standard for establishing invalidity remains that of "clear and convincing" evidence. *American Hoist & Derrick Co. v. Soma & Sons*, 725 F.2d 1350, 1360 (Fed. Cir. 1984) (burden and standard of proof on invalidity are neither shifted, lightened nor changed by production of new prior art or other evidence not before Patent and Trademark Office).

from biased witnesses that fall far short of the mark. One of those witnesses, Daniel Kohn, the co-founder and C.E.O. of NetMarket, testified he was "annoyed" when asked about the patents-in-suit at his deposition.[9] When he first learned of the patents, Kohn posted on the Internet: "Patenting stuff this obvious is just pathetic!"[10]

Amazon's alleged proofs of invalidity, at best, raise fact issues and witness credibility issues that preclude the granting of summary judgment. Amazon is unable to point to documents proving by clear and convincing evidence the conception or reduction to practice of the purported NetMarket "prior art," as these documents simply do not exist. They have no actual screen shots of the NetMarket website—the illustrations in their brief are just simulations[11]—and the key witnesses have demonstrated an inability to recall exactly what the NetMarket website supposedly looked like.[12] Likewise, the "session ID" illustration in Amazon's brief is fictitious.[13] Nearly dispositive of Amazon's motion is the fact that although the NetMarket website relied upon software, **none** of the original software for operating the website has been located by Amazon, despite testimony by NetMarket witnesses that software is the best evidence of how the website allegedly worked in 1994.[14] Furthermore, what oral evidence the NetMarket witnesses did provide at their depositions fails to support prior existence of either the "shopping cart" invention as claimed in the '314 and '492 patents or the session ID invention as claimed in the '780 patent. Even if such testimony were (contrary to the rules) considered in a light most

---

[9] *See infra*, Statement of Genuine Issues ¶ 29 [hereinafter "SI"].

[10] *Id.* ¶ 28.

[11] *See id.* ¶¶ 3-4, 13-14; Def.'s Mot. at 7.

[12] *See* SI ¶¶ 35-36.

[13] *See id.* ¶ 43. Amazon describes what it deems to be a "NetMarket Session ID" in "an *illustration* an [sic] *exemplary* NetMarket URL." (emphasis added). Def.'s Mot. at 15.

[14] *See* SI ¶ 17-18.

favorable to Amazon, the credibility of such oral testimony must be weighed and considered by the jury.[15]

The only proper conclusion which may be drawn from this motion is that the standard for obtaining summary judgment—that there be no genuine issue of material fact—has not been met here. Amazon's motion for partial summary judgment on the issue of invalidity should be denied.

## II.   STATEMENT OF GENUINE ISSUES

Soverain disputes the Statement of Material Facts set forth in Amazon's motion and provides the following Statement of Genuine Issues in accordance with Local Rule CV-56(b):

### A.   Introduction

1.   There are many issues of material fact relating to the development of NetMarket that make summary judgment of invalidity inappropriate.

2.   Among other things, the credibility of the individuals who founded NetMarket is an issue that must be determined by the jury.

3.   The documentary record regarding NetMarket is incomplete and fragmentary: there are no screen shots of the actual operating system and no software for operating the alleged shopping cart and session ID capabilities of the system. This makes the credibility of the witnesses paramount and compels denial of summary judgment.

4.   There is no documentary corroboration of the alleged conception and reduction to practice dates of NetMarket. The alleged "conception" documents are "demo" pages that were not produced by the actual website. (Declaration of Thomas L. Giannetti ("Giannetti Dec."), Ex. 3 at 34-35, 132.)

5.   The alleged conception document is a January 17, 1994 business plan (*id.*, Ex. 4) that contains no information on the operation of the software for the NetMarket website.

---

[15] *See Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 628 (1944) ("The jury [are] the judges of the credibility of the witnesses . . . . That part of every case, such as the one at bar, belongs to the jury.") (quoting *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88 (1891)); *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 266 F.3d 1358, 1363 (Fed. Cir. 2001) ("The court may not assess the credibility of testimony when granting summary judgment; thus to the extent that the district court assessed credibility in reaching its conclusions regarding the [evidence], those conclusions were improper.").

6.    There is no software that reflects the operation of the alleged "shopping cart" or session ID features of the NetMarket website that would corroborate the alleged reduction to practice.

7.    Amazon hopes to support its prior art defense based on NetMarket mainly on the testimony of Dan Kohn, Joshua Smith, Guy Haskin and Eiji Hirai, all of whom are on Amazon's witness list.

8.    The credibility of these witnesses is critical to Amazon's invalidity defense based on NetMarket, making summary judgment inappropriate.


**B.    Daniel Kohn**

9.    With Roger Lee, who is not on Amazon's witness list and whose deposition was not taken by Amazon, Dan Kohn founded NetMarket in 1993 (*id*., Ex. 1 at 18).

10.   Kohn's original plan was to set up a travel agency on the Internet (*id*. at 18).

11.   Kohn testified that he wrote a business plan in February or March of 1993 (*id*., Ex. 2 at 13). This original business plan is missing and has never been produced in this litigation.

12.   Kohn identified a business plan sent to Noteworthy Music in January of 1994 (*id*., Ex. 3 at 31). Amazon relies on the illustrations of a website attached to that business plan to establish the alleged conception of the "shopping cart" by NetMarket.

13.   The website illustrations in the Noteworthy Music business plan were not produced by an actual website. They were simulated "demo pages" that were produced for the purpose of the business plan. (*Id*., Ex. 3 at 34-35, 132.)

14.   Kohn has no pictures of how the NetMarket website actually appeared (*id*., Ex. 3 at 132-33).

15.   Kohn has no notebooks documenting the development of the NetMarket website (*id*. at 133).

16.   Kohn testified that the software and e-mails comprising the development records for the NetMarket website were lost (*id*. at 133-34). Kohn referred at his deposition to a "back up tape" of his e-mails, which he last saw in 1997-98 (*id*., Ex. 1 at 69). The tape has not been found.

17.   Kohn testified that the best record of what the NetMarket system was is the contemporaneous (*i.e.*, 1994) software (*id*., Ex. 3 at 135).

18.   Kohn testified that the software would be a better record of the system than his recollection (*id*.).

19. Kohn admitted he is not a good programmer (*id.*, Ex. 1 at 13). The majority of the programming work on the NetMarket project was not done by Kohn, but by Guy Haskin and Eiji Hirai (*id.* at 23, 76).

20. There is no record of the NetMarket software as it allegedly existed in July or August of 1994. Kohn has no copies, and is not aware of where copies might be (*id.* at 38).

21. At the time of his deposition in February 2005, Kohn had not seen the NetMarket software for 11 years (*id.*).

22. The August 12, 1994 *New York Times* article about NetMarket (*id.*, Ex. 5) was incorrect in crediting NetMarket with the first secure transaction on the Internet (*id.*, Ex. 3 at 138-39). Furthermore, the article contains no technical description of the system or its operation.

23. Kohn could not give the date on which session IDs were allegedly implemented by NetMarket (*id.* at 155).

24. Kohn had no documents telling the NetMarket programmers how to implement session IDs (*id.* at 156).

25. NetMarket was a commercial failure. For the one-year period July '94 - June '95 its revenues were approximately $7500 (*id.* at 141).

26. NetMarket was sold to CUC International in December 1994 (*id.* at 90-91). The up-front cash payment was $235,000. From this, $40,000 had to be repaid to the "angel" investor (Mr. Lee's father) who provided initial financing, leaving just $195,000 to be shared by Kohn and his three partners (*id.* at 143-44).

27. Kohn admitted that it "bothers" him that Open Market got a patent on what he believes NetMarket did first (*id.* at 164).

28. When Kohn learned of the patents-in-suit in 1998 he posted a comment on an Internet bulletin board: "Does anyone know to whom I can forward this info to for it be useful in the fight against OpenMarket's patents? Patenting stuff this obvious is just pathetic" (*id.* at 162).

29. When asked about the patents, Kohn testified he is "annoyed" that Open Market claimed to have done something he contends he did first (*id.*).

30. Kohn's testimony is heavily relied upon by Amazon in its motion (*see* Def.'s Mot. at 18-25; Taylor Dec., Ex. 1 (claim charts)). Kohn's testimony and exhibits are the principal factual support for Amazon's motion.

31. Kohn's bias, and the lack of documents and software to corroborate his testimony, raise issues of credibility that must be presented to the jury; summary judgment is therefore inappropriate.

C.    **Joshua Smith**

32.    The deposition of Joshua Smith, another former NetMarket employee, was taken by Amazon.

33.    Smith became a beta tester of the NetMarket website in May 1994 (*see* Giannetti Dec., Ex. 6 at 59, Ex. 7). In September 1994 he became a NetMarket employee (*id.*, Ex. 6 at 47).

34.    Smith was not an employee of NetMarket when the "shopping cart" and session ID were allegedly reduced to practice at NetMarket.

35.    Smith testified that he had a "generally bad" memory. He testified that he could not recall clearly events relating to NetMarket that were not documented (*id.* at 59-60).

36.    Smith admitted that he had no "visual image" of what the NetMarket pages looked like (*id.* at 60).

37.    Smith had seen no "screen shots" of the NetMarket website (*id.* at 60-61).

38.    Smith did not have access to NetMarket software when he was a beta tester (*id.* at 63). He could not describe details of the NetMarket software as it existed in May of 1994 (*id.*).

39.    The NetMarket beta system Smith tested was not capable of taking orders (*id.* at 66).

40.    The July 25, 1994 e-mail from Smith (*id.*, Ex. 8), partially quoted by Amazon, reveals, in the portion omitted by Amazon, that NetMarket's "session ID" did not work to maintain session:

> "My guess is that the trailing 'st=<stuff> part of your URLs is where the user's 'history' for this session is encoded, and *that it's getting changed in some way that it shouldn't,* but I'll leave the detailed debugging up to you guys. (grin) - Josh (irilyth@hmc.edu)" (emphasis added).

41.    Smith was cooperating with Amazon's counsel, and collected and produced many documents prior to his deposition. However, none of the documents produced by Smith showed where in the URL the alleged session ID was placed (*id.*, Ex. 6 at 69).

42.    Smith, like Kohn, is biased against Open Market. His bias and lack of memory are credibility issues that must be presented to the jury.

43.    There is no support for the alleged illustration of NetMarket's session ID appearing at page 15 of Amazon's motion, in the testimony of Smith or any of the other witnesses or in the documents.

44.     There is no support in the testimony of Smith or the other former NetMarket employees for the proposition that NetMarket was attempting to maintain a session, as opposed to maintaining state. The expected expert testimony in the case, including that of Dr. Taylor, establishes that these are different and that one can maintain state without maintaining session (*see* Giannetti Dec., Ex. 9 at 117-18).

## D.     **Guy Haskin**

45.     Guy Haskin is another former NetMarket employee whose deposition was taken by Amazon. Mr. Haskin last saw a complete copy of Net Market's source code in 1996 (*id.*, Ex. 10 at 17).

46.     Haskin joined Net Market part-time in January 1994 (*id.* at 20-21).

47.     Haskin claims to have developed the purported software for the "session ID" (*id.* at 29).

48.     Haskin was unsure how the purported "session ID" in the beta test version was implemented (*id.* at 50).

49.     Haskin's March 23, 1994 e-mail (*id.*, Ex. 11) does not corroborate his testimony describing the alleged NetMarket session ID. It does not describe using a randomly generated number as a session ID, as Haskin claims was done at NetMarket. Instead, it describes alternatives using process IDs (rejected by Kohn as "causing confusion and general mayhem") or a complicated checkout system involving locks and keys (*id.*, Ex. 10 at 47-50).

50.     Haskin referred to computer code at his deposition that was found in a backup tape at Swarthmore. This was "supporting code," not the actual code for operating the session ID or shopping cart (*id.* at 13-14).

51.     Haskin's testimony about the alleged NetMarket session ID is uncorroborated. As a matter of law, uncorroborated testimony is a legal nullity.

## E.     **Experts**

52.     Material issues of fact are also confirmed by the expected expert testimony in this case.

53.     For instance, Amazon's expert, Dr. Taylor, takes the position that NetMarket had the shopping cart and shopping cart computer called for by the '314 patent claims. *See, e.g.*, Taylor Dec. Ex. 1, claim charts for '314 patent, claim elements 34[c] and 34[g]. Dr. Taylor cites nothing from the record to support these conclusions.

54.     Dr. Shamos, Soverain's expert, has provided a declaration pointing out that he holds the opposing view that NetMarket does not have a shopping cart or a shopping cart computer (Declaration of Michael Ian Shamos ("Shamos Dec.") ¶¶ 8-9). He also states that

NetMarket fails to teach a shopping cart database and other elements of the '492 patent claims (*id.* ¶¶ 10-12).

55.     Dr. Shamos' declaration takes issue with other assertions in Amazon's motion, including the assertion that Haskin's March 23, 1994 e-mail (Carraway Dec., Ex. 15; Giannetti Dec., Ex. 11) teaches a session ID. (Shamos Dec. ¶¶ 13-16.)

56.     Specifically referring to Haskin's March 23, 1994 e-mail, Dr. Shamos' opinion is that while the e-mail discusses methods for maintaining state, it does not teach or disclose anything resembling a "session." (Shamos Dec. ¶ 14.)

57.     Dr. Shamos also commented in his declaration on NetMarket's "instructions" letter of April 13, 1994 (Carraway Dec., Ex. 18), Eiji Hiraj's e-mail to Josh Smith of May 23, 1994 (Carraway Dec., Ex. 21; Giannetti Dec., Ex. 7) and the NetMarket e-mail of May 26, 1994 (Carraway Dec., Ex. 22). Dr. Shamos' declaration states that these documents contain no reference to session or state maintenance. (Shamos Dec. ¶¶ 17-19.)

58.     There is no documentary evidence that NetMarket taught or used "session IDs." (Shamos Dec. ¶ 21.)

59.     These conflicts should be resolved by the jury and not by summary judgment.


## III.    ARGUMENT

### A.    Amazon Has Failed to Establish That There Is No Genuine Issue of Material Fact As To the Alleged Dates of Invention of the NetMarket Website

Fed. R. Civ. P. 56 (c) provides, in pertinent part, that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers
> to interrogatories, admissions on file, together with the affidavits,
> if any, show that there is no genuine issue as to any material fact
> and that the moving party is entitled to a judgment as a matter of
> law.

Summary judgment is designed to secure a just, speedy and inexpensive resolution in appropriate cases, including patent cases.[16] When no reasonable jury would return a finding in favor of a party on an issue, the district court is obligated to grant partial or complete summary

---

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also, e.g., Desper Prods., Inc. v. QSound Labs., Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990).

judgment.[17] "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."[18] In *Typeright Keyboard Corp. v. Microsoft Corp.*,[19] the Federal Circuit confirmed that although "[s]ummary judgment should not be denied simply because the opposing party asserts that the movants [sic] witnesses are not to be believed . . . summary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movants [sic] witnesses."[20] As the Supreme Court stated in *Sartor v. Arkansas Natural Gas*, "[T]he mere fact that [a] witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact."[21]

The need to allow a jury the opportunity to evaluate the testimony of witnesses is especially strong in the present situation, where the predominance of Amazon's evidence relies upon the oral testimony—testimony with little or no supporting evidence or corroboration—of Daniel Kohn, co-founder of NetMarket, who has expressed a strong interest in joining Amazon's campaign against the validity of the '780, '314 and '492 patents well prior to and independent of the present case before the Court.[22] As Kohn wrote, on learning of the patents in 1998 (and suggesting that the NetMarket efforts predated and encompassed the disclosure of the patents),

---

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[18] Fed. R. Civ. P. 56 advisory committee note (1963 Amendment).

[19] 374 F.3d 1151 (Fed. Cir. 2004)

[20] *Id.* at 1158 (citing *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 628-29 (1944)).

[21] *Sartor*, 321 U.S. at 628 (quoting *Sonnentheil v. Christian Moerlein Brewing Co.*, 172 U.S. 401, 408 (1899)); *see also Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1368 (Fed. Cir. 1999) ("A witness who testifies to antedating the invention of the patent-in-suit can be expected to derive a sense of professional or personnel [sic] accomplishment in being the first in the field, and in this sense is not uninterested in the outcome of the litigation, even if that witness is not claiming entitlement to a patent. Of course, the need for corroboration takes on special force when an otherwise uninterested witness shows some reason to be biased in favor of the interested party").

[22] *See* SI ¶ 28.

"Does anyone know to whom I can forward this info to for it be useful in the fight against OpenMarket's patents? Patenting stuff this obvious is just pathetic."[23]

Where alleged prior art resides in an abstract and intangible act, *i.e.*, the conception of an inventive idea, evidence supporting that act, especially such evidence provided by interested parties, warrants special care and scrutiny by the finder of fact.[24] The *Barbed-Wire Patent* case and its progeny have established that the testimony of a witness reporting an account of prior invention or prior public use as evidence in order to invalidate a United States Patent requires corroboration,[25] preferably via contemporaneous written or other tangible evidence.[26]

Amazon places much reliance on *Thomson S.A. v. Quixote Corp.*,[27] asserting that *Thomson* declares that "the corroboration requirement does not apply to the testimony of inventors who are not interested parties in the litigation."[28] But Amazon is wrong, as the *Thomson* holding was explained in a later decision by the Federal Circuit, *Finnigan Corp. v. Int'l Trade Comm'n,*[29] as follows:

---

[23] *Id.*

[24] *See Price v. Symsek*, 988 F.2d 1187, 1191-92, 1194-95 (Fed. Cir. 1993).

[25] *See Typeright*, 374 F.3d at 1159 ("If the jury finds the testimony of [defendant's] witnesses credible, and sufficient to establish [the existence of published prior art], the district court will still have to address whether the requirement of corroboration has been met. . . . Both physical evidence and oral testimony of a disinterested party can serve to satisfy the corroboration requirement."); *Texas Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1217 (Fed. Cir. 2002) ("[C]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest.") (quoting *Finnigan*, 180 F.3d at 1369); *see also Marhurkar Corp. v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996) (the corroboration rule "provides a bright line for both district courts and the PTO to follow").

[26] *See Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 743 (Fed. Cir. 2002) ("The one writing proffered to corroborate the oral testimony . . . is inadequate to meet the applicable standard of proof. Reliable evidence of corroboration preferably comes in the form of physical records that were made contemporaneously with the alleged prior invention. . . . We do not conclude that the witnesses below were not credible. Rather, with the guidance of precedent cautioning against the reliance on oral testimony alone, we hold that the evidence of record did not provide the clear and convincing evidence necessary to invalidate the patent for prior public knowledge."); *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001) ("Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated.").

[27] 166 F.3d 1172 (Fed. Cir. 1999).

[28] Def.'s Mot. at 21.

[29] 180 F.3d 1354 (Fed. Cir. 1999).

> [T]he facts of *Thomson* did not present the question of the
> necessity of corroboration vel non, but rather the sufficiency of the
> corroborating evidence, a distinct inquiry involving an assessment
> of the totality of the circumstances, including consideration of "the
> interest of the corroborating witness in the subject matter of the
> suit." . . . ***Cases like Thomson . . . do not stand for the proposition
> that only an interested witness's testimony requires
> corroboration.*** In any event, corroboration is required of any
> witness whose testimony alone is asserted to invalidate a patent,
> regardless of his or her level of interest.[30] (emphasis added)

Amazon's attempt to fashion corroboration for the NetMarket witnesses fails to meet the prevailing standard for such evidence at trial, let alone meet the even stricter standard for granting summary judgment. The NetMarket witnesses have agreed that software providing for the operation of a website provides the best evidence of the existence of such a website,[31] and the best means to determine how such a website functioned.[32] However, despite Amazon's exhaustive efforts, no software for operating the NetMarket website has been located.[33] NetMarket has provided no documentary support for the dates of conception, or even contemporaneous evidence of what NetMarket might have considered its "conception" to be. Specifically, NetMarket provides no corroborated proof of: (1) when NetMarket supposedly conceived the "session ID" invention of the claims of the '780 patent, (2) whether the NetMarket staff made diligent efforts directed to reducing the invention of the '780 claims to practice, and (3) whether and when the NetMarket staff actually reduced the invention of the '780 patent

---

[30] *Id.* at 1368-69 (emphasis added). Subsequent Federal Circuit decisions have cited and reinforced this holding. *See, e.g., Checkpoint Systems, Inc. v. All-Tag Security S.A.*, 2005 WL 1421801, *7 (Fed. Cir. June 20, 2005) ("The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony.") (quoting *Finnigan*, 180 F.3d at 1366); *Typeright*, 374 F.3d at 1159; *Dow Chemical v. Mee Indus., Inc.*, 341 F.3d 1370, 1378 (Fed. Cir. 2003); *Juicy Whip*, 292 F.2d at 737-38; *Texas Digital*, 308 F.3d at 1217.

[31] *See* SI ¶ 17.

[32] *See id.* ¶ 18.

[33] *See id.* ¶¶ 6, 20.

claims to practice. In fact, there is no documentary evidence that Haskin (or anyone else at NetMarket) invented or made use of session ID's.[34]

Equally problematic is that Amazon fails to provide corroborated proof of: (1) when NetMarket supposedly conceived the "shopping cart" invention of claims of the respective '314 and '492 patents; (2) whether the NetMarket staff made diligent efforts directed to reducing the inventions to practice, and (3) whether and when the same individuals actually reduced the invention of '314 and/or '492 patent claims to practice. In fact, there is a dispute over whether Net Market ever had a "shopping cart."[35]

Amazon's motion suggests that NetMarket's conception date regarding a "session ID" predates that of claims 1, 4, 22 and 24 of the '780 patent.[36] But the March 23, 1994 Haskin e-mail discusses systems for maintaining state (not session) involving *process IDs* and *complicated alternatives* to the "session ID" supposedly implemented by NetMarket.[37] Further, the July 25, 1994 e-mail of Josh Smith, supposedly corroborating the use of a "session ID" by NetMarket, stated that the "st=<stuff> part of [NetMarket's] URLs" is "getting changed in some way that it shouldn't, but I'll leave the detailed debugging up to you guys. (grin)."[38] This quote, truncated by Amazon in its brief, indicates that the NetMarket site did *not* use a constant "session ID" "value" over the course of a customer session. Smith's e-mail points to the conclusion that NetMarket was not maintaining session.[39] Haskin's uncorroborated testimony does not even establish the date of when Haskin allegedly conceived of his idea, only that this

---

[34] *See* Shamos Dec. ¶¶ 19, 21.

[35] *See* SI ¶ 53-54.

[36] Def.'s Mot. at 18-23.

[37] *See* SI ¶¶ 49, 56; Shamos Dec. ¶¶ 14-16.

[38] *See* SI ¶ 40.

[39] As Dr. Taylor admitted at his deposition, maintenance of state and of session are two different things. *See* SI ¶ 44. *See also* Shamos Dec. ¶¶ 15-16.

supposedly occurred at some unspecified time prior to the launch of the live website (contended to be July 7, 1994).[40]

It is clear that genuine issues of material fact remain as to whether and when NetMarket's website constituted prior art to the patents in suit under 35 U.S.C. § 102 (a) and (g).

**B.** **Amazon Has Failed to Establish That There Is No Genuine Issue of Material Fact That the NetMarket Website Was in Prior Public Use**

Under 35 U.S.C. § 102(b), inventions are not patentable if public use is made of the invention more than a year prior to the filing for patent on the invention.[41] "Public use" does not include secret, experimental or developmental use.[42] Instead, "public use" requires that the invention is open and available to the public; *i.e.*, persons "other than the inventor who [are] under no limitation, restriction or obligation of secrecy to the inventor."[43]

On the present record, there is no proof that the public had access to the details of the NetMarket website. In fact, the uncontradicted record is that it did ***not***. As discussed above, the NetMarket witnesses have agreed that the best, and perhaps only sufficient way of understanding how the NetMarket website worked would be through an analysis of the NetMarket source code.[44] The source code is the basis of the NetMarket system, and its disclosure was necessary to enable others to learn how the NetMarket system allegedly operated. However, the public had

---

[40] Def.'s Mot. at 28.

[41] 35 U.S.C. § 102(b) (2000).

[42] *See City of Elizabeth v. Am. Nicholson Pavement Co.*, 97 U.S. 126, 134-36 (1877); *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1313 (Fed. Cir. 2005) (citing *Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1059 (Fed. Cir. 1996)); *Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1321 (Fed. Cir. 2002) (citing *Baker Oil Tools, Inc. v. Geo Vann, Inc.*, 828 F.2d 1558, 1564 (Fed. Cir. 1987)).

[43] *Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1334 (Fed. Cir. 2005) (quoting *Netscape*, 295 F.3d at 1320).

[44] *See* SI ¶¶ 17-18, 38.

no access to the NetMarket source code,[45] and thus the public had no meaningful access to the NetMarket system.[46]

Josh Smith testified about his experiences as a NetMarket beta tester.[47] The beta testers were not provided access to the NetMarket source code.[48] It is beyond dispute that NetMarket took pains to restrict access to the NetMarket technology. NetMarket prevented even the beta testers from understanding the mechanics underlying the site.

Reinforcing this lack of public access to the website, in his deposition testimony, Smith admitted that, as a beta tester, he did *not* know how the system worked.[49] Smith only learned the operating details of the NetMarket system *after* joining the company as an employee in 1994.[50] The *New York Times* article, and other brief human interest stories on NetMarket provided in contemporary newspapers, disclosed nothing of the operation of the system.[51] The record does not establish by clear and convincing evidence that the NetMarket website, even if live and

---

[45] *See id.* ¶ 38.

[46] *See, e.g., W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1549 (Fed. Cir. 1983) ("There is no evidence that a viewer of the [Cropper] machine could thereby learn anything of the process, among all possible processes . . . [L]ooking at the machine in operation does not reveal [the process]. Nor does looking disclose whether the . . . elements of the invention set forth in the claims are involved. . . . If [the manufacturer] offered and sold anything, it was only tape. . . . Neither party contends . . . that the public could learn the claimed process by examining the tape."). Like the third-party manufacturer's actions in *Gore*, NetMarket's 1994 tests did not shed light on the underlying process. Amazon relies upon *Gore*; however, its reliance is misplaced. Although the *Gore* Court invalidated one patent claim based on the inventor's *own* commercial use of the patented technology, the Court upheld the validity of other claims where, as here, the alleged prior art was a secret process of a third party (Cropper). The Court remarked: "As between a prior inventor who benefits from a process but suppresses, conceals or otherwise keeps the process from the public, and a later inventor who files a patent application from which the public will gain a disclosure of the process, the law favors the latter." *Id.* at 1550.

[47] The present facts can be readily distinguished from *Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1321-23 (Fed. Cir. 2002). In *Netscape*, the inventor installed his system in the Lawrence Berkeley Laboratory, with no confidentiality restrictions. *Id.* at 1321-22. The *Netscape* Court distinguished the facts there from those in *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986) ("[T]hat inventor [in *Moleculon Research*] always retained control over the use of the device as well as over the distribution of information concerning it.") *Netscape*, 295 F.3d at 1322. The facts with respect to NetMarket's activities are far more analogous to those in *Moleculon Research* than to *Netscape*.

[48] SI ¶ 38.

[49] *See id.*

[50] *See id.* ¶ 33, 38.

[51] *See id.* ¶ 22.

operational, constituted a "public use" of the inventions as claimed in the '314, '492 or '780 patents. At a minimum, there is a triable issue of material fact as to public availability of the NetMarket system. The issue of "public use" is not appropriately subject to disposition by summary judgment motion.

**C.** **Amazon Has Failed to Establish That There Is No Genuine Issue Of Material Fact As To Whether The NetMarket Website Meets All Limitations of the '314, '492 or '780 Claims**

A patent claim is anticipated only if each and every limitation of the claim was previously made, manufactured or used by another.[52] Under the required element-by-element analysis, the NetMarket system, as described, fails to anticipate the subject matter of any claims of the respective '314, '492 or '780 patents.

In his declaration and claim charts, Amazon's expert, Richard Taylor, represents that all asserted claims of the patents-in-suit implicated by this motion are anticipated by NetMarket. In many of those instances where Taylor cites an alleged correspondence in the NetMarket system, he fails to refer to any supporting evidence for the element-by-element correspondence, but rather offers (an often repetitive) conclusory statement. For example, in response to the patent '314, claim 34 "[g]," which reads:

> said shopping cart computer being programmed to receive said plurality of shopping cart messages, to modify said shopping cart in said shopping cart database to reflect said plurality of requests to add said plurality of products to said shopping cart, and to cause a payment message associate with said shopping cart to be created;

---

[52] *EMI Group N. Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1350 (Fed. Cir. 2001) (citing *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 771 (Fed. Cir. 1983)).

Taylor provides this terse and inadequately supported conclusion: "The NetMarket server was programmed to operate this way."[53]  A similarly perfunctory conclusion is offered at many other points in Taylor's supporting claim chart exhibit to his declaration.[54]

Furthermore, to the extent that Dr. Taylor contends in his claim charts that the NetMarket website anticipates elements of the asserted claims explicitly, this is based on an assumption that the details of the NetMarket website operation are supported by the evidence presented by Amazon, *i.e.*, that NetMarket did what Amazon states that it did.  But, as shown above, there is no corroborated evidence put forth by Amazon that shows the actual operation of the NetMarket website.

Finally, there is substantial evidence that the NetMarket website fails to anticipate the claims in dispute.  Although NetMarket may have provided a means for selling goods over the Internet, the experts disagree over whether NetMarket provided true "shopping cart" functionality.[55]  There is a dispute over whether NetMarket's "shopping list" meets the limitations of the disputed claims, including the broadest independent claims of the '314, '492 or '780 patents.[56]  And, in addition to lacking a true "shopping cart" (and thereby lacking a "shopping cart computer"), the NetMarket system lacked shopping cart messages identifying and corresponding to *each one* of a plurality of products that a user wished to add to a shopping cart (as required, *e.g.*, in claims 34-39 of the '314 patent and claims 17-18 and 35-36 of the '492

---

[53] Taylor Dec. Ex. 1.; *but cf.* Shamos Dec.¶¶ 8-12.

[54] *See* Taylor Dec. Ex. 1.  In fact, Dr. Taylor refers back to his "NetMarket server was programmed to operate this way" explanation (for '314 patent claim 34 [g]) as the entirety of his analysis for corresponding elements in '314 patent claim 39 and '492 patent claims 17, 18, 35 and 36.

[55] SI ¶¶ 53-54.

[56] *See id.*

patent). As shown in the NetMarket illustrations in Amazon's brief, the NetMarket system at best appears to have had a "shopping list" which groups items together for ordering in batches.[57]

In sum, there are numerous genuine issues of material fact as to whether the operation of the NetMarket website anticipates claims 34-39 of the '314 patent, claims 17-18 and 35-36 of the '492 patent and claims 1, 4 and 22-24 of the '780 patent. The issue of the validity of the patent claims in dispute bristles with fact issues that must be subjected to consideration by the finder of fact at trial.

## IV.   <u>CONCLUSION</u>

There are numerous genuine issues of fact regarding the conception and reduction to practice dates of the alleged NetMarket prior art considered in Amazon's motion, whether the NetMarket website was in "public use," and the credibility of the NetMarket witnesses, as well as whether the NetMarket website anticipates the patent claims implicated by the motion. The Defendant's Motion for Partial Summary Judgment for Invalidity on '314 patent claims 34-39, '492 patent claims 17-18 and 35-36, and '780 patent claims 1, 4 and 22-24 should be denied.

Date:  June 24, 2005.

Respectfully submitted,

Kenneth R. Adamo (Bar No. 00846960)
Attorney in Charge
JONES DAY
2727 North Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-1515

---

[57] *See* Def's Mot., Ex. 12, pp. 14-16; *but cf.* Shamos Dec. ¶ 9.  Equally unsupported are Amazon's analyses of '780 claims 4, 22 (erroneously equating recording in a log with "tracking . . . client requests") and 24 (documents not "customized . . . based on a user profile").  Def's Mot. at 20-21.

Facsimile:  (214) 969-5100
E-mail:  kradamo@jonesday.com

Thomas L. Giannetti
Barry R. Satine
Ognjan V. Shentov
Jennifer Seraphine
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
E-mail:  tlgiannetti@jonesday.com


Carl R. Roth (Bar No. 17312000)
Michael Smith (Bar No. 18650410)
THE ROTH LAW FIRM P.C.
115 N. Wellington, Suite 200
Marshall, Texas  75670
Telephone:  (903) 935-1665
Facsimile:  (903) 935-1797
E-mail:  cr@rothfirm.com


ATTORNEYS FOR PLAINTIFF
SOVERAIN SOFTWARE LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **SOVERAIN SOFTWARE LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action No. 6:04cv14 |
| **v.** | ) | |
| | ) | |
| **AMAZON.COM, INC.,** | ) | Hon. Leonard E. Davis |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

DEFENDANT AMAZON.COM'S MOTION FOR PARTIAL SUMMARY

JUDGMENT THAT '314 PATENT CLAIMS 34-39, '492 PATENT CLAIMS 17-18 AND

35-36, AND '780 PATENT CLAIMS 1, 4, AND 22-24 ARE INVALID UNDER 35 U.S.C.

§ 102 is hereby DENIED.


So ORDERED and SIGNED this ___ day of _____ 2005.


_____

## PROOF OF SERVICE

The undersigned certifies that on the 24th day of June 2005, the foregoing PLAINTIFF SOVERAIN SOFTWARE LLC'S OPPOSITION TO DEFENDANT AMAZON'S SUMMARY JUDGMENT MOTION ON VALIDITY was electronically filed with the Court. Pursuant to Local Rule CV-5, this constitutes service on the following counsel:

| | |
|---|---|
| Max. L. Tribble | mtribble@susmangodfrey.com |
| Victoria Capitaine | vcapitaine@susmangodfrey.com |
| Parker C. Folse III | pfolse@susmangodfrey.com |
| Brooke A. M. Taylor | btaylor@susmangodfrey.com |
| Eric Findlay | efindlay@rameyflock.com |
| J. Christopher Carraway | christopher.carraway@klarquist.com |
| Richard D. McLeod | rick.mcleod@klarquist.com |
| John D. Vandenberg | john.vandenberg@klarquist.com |